United States District Court  
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>EXDS, Inc. (f/k/a EXODUS COMMUNICATIONS, INC.), et al.,<br><br>        Debtor<br>_____<br><br>EXDS, Inc.,<br><br>        Plaintiff,<br><br>   v.<br><br>DEVCON CONSTRUCTION, INC., et al.,<br><br>        Defendants.<br>_____ | Case No.: C 05-0787 PVT<br><br>**ORDER GRANTING DEFENDANT DEVCON'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (REGARDING AFFIRMATIVE DEFENSE OF RELEASE AS TO PROJECTS SC6 AND SC7)** |

        On May 3, 2005, the parties appeared before Magistrate Judge Patricia V. Trumbull for hearing on a Motion for Partial Summary Judgment on Devon's Affirmative Defenses Relating to the Release and Dismissing all Claims relating to Projects SC6 and SC7 by Defendant Devcon Construction, Inc. ("Devcon") and Plaintiff's Motion for Summary Judgment on Devcon's Affirmative Defenses.  After the hearing, the court solicited supplemental briefing from the parties, which the parties supplied.  Plaintiff EXDS, Inc. requested, and the court granted, leave to file a

reply to Devcon's supplemental brief. EXDS filed its reply on June 6, 2005. Based on the briefs and arguments submitted,[1]

IT IS HEREBY ORDERED that Devcon's motion for partial summary judgment on its affirmative defense of release regarding projects SC6 and SC7 is GRANTED, and EXDS' related motion for partial summary judgement is DENIED, for the reasons discussed below.

## I.  BACKGROUND

Between 1999 and 2001, EXDS[2] hired Devcon as a general contractor to build several Internet Data Centers and to retrofit several existing buildings.[3] Among these was a 300,000 square-foot Internet Data Center in Santa Clara, California consisting of two new buildings known as "SC6" and "SC7." Devcon recorded mechanics' liens against SC6 and SC7 on September 6, 2001.

On September 26, 2001, EXDS filed for bankruptcy under Chapter 11 of the Bankruptcy Code. At that time, Devcon had outstanding mechanics' liens against SC6 and SC7 for $1,131,604 and $2,283,415.

On December 22, 2001, the bankruptcy court issued its Order under 11 U.S.C. §§ 105 and 363 and Fed. R. Bankr. P. 9019 Authorizing Procedures for Payment of Mechanics' Liens, (the "Mechanics' Lien Order"). The Mechanics' Lien Order provided, in relevant part:

> "2.  The Debtors are authorized to compromise and settle mechanics' lien claims, not to exceed $18 million in the aggregate, without further Court approval, subject to the procedures (the 'Notice Procedures') set forth below:
>
> "A.  The Debtors shall give notice (the 'Notices') of the proposed settlements to (i) the Office of the United States Trustee; (ii) counsel to the Creditors' Committee; (iii) affected landlords and (iv) counsel to the Debtors' postpetition lenders (collectively the 'Notice Parties'). Notices shall be served by facsimile, so as to be

---

[1] The holding of this court is limited to the facts and the particular circumstances underlying the present motion.

[2] As used herein, "EXDS" refers collectively to Exodus Communications, Inc. (predecessor to EXDS, Inc.) and EXDS, Inc. (both before and after its reorganization).

[3] Except as expressly stated otherwise, the material facts set forth herein are based on the undisputed evidence submitted by the parties. Some non-material facts mentioned for only background and context are based on the undisputed representations of the parties.

ORDER, *page 2*

> received by 5:00 p.m. (Eastern time) on the date of service. The Notice shall specify (1) the claim(s) to be compromised and settled, (2) the identity of the particular Debtor settling the claim, (3) the identity of the claimant (including a statement of any connection between the claimant and the Debtors), (4) the terms of the settlement, (5) any lien documentation supporting the validity and amount of the lien, and (6) a brief statement of the basis for the settlement.
>
> "B. The Notice Parties shall have five (5) days after the Notices are sent to object.
>
> "C. A Notice Party must submit an objection in writing to Skadden, Arps, Slate, Meagher & Flom, Four Times Square, New York, New York, 10036-6522 (Attn: Alan R. Dalsass, Esq.) (Fax: (212) 735-2000) ('SASM&F'). If SASM&F receives no written objection prior to the expiration of the applicable period, the proposed settlement shall be deemed consented to by the Notice Parties and the Debtors shall be authorized to consummate the settlements without further notice or order of this Court."

On January 22, 2002, the bankruptcy court approved the sale of substantially all of EXDS' operating assets, including its leasehold interests in SC6 and SC7, to Cable & Wireless PLC and Digital Island, Inc. In connection therewith, the bankruptcy court issued an order requiring EXDS to deposit into an escrow account a sum equal to 150% of Devcon's mechanics lien claims, which would remain available to pay those claims.

In April, 2002, Devcon filed a proof of claim in EXDS' bankruptcy.

In April and May of 2002 Ellyn Freed on behalf of EXDS and Carolyn Stuart on behalf of Devcon negotiated the terms for a settlement of Devcon's claims on the SC6 and SC7 projects. The parties exchanged proposed drafts for the settlement agreement in April. Those drafts included mutual releases of unknown claims, with specified exceptions, and waivers of California Civil Code section 1542.

On May 28, 2002, Devcon filed an objection to EXDS' Second Amended Joint Plan of Reorganization of EXDS, Inc. and its Debtor Affiliates (the "Plan").

Counsel finally reached agreement on the terms of the settlement, and reduced those terms to writing in emails exchanged between Freed and Stuart. On May 29, 2002 Freed forwarded to Stuart an email Freed had received from Richard Levy, an attorney who was working for the creditors'

committee and the post-petition lenders ("Freed's First May 29th Email to Stuart"). At the top of the email, Freed wrote:

> "I would normally ask for one other thing – Devcon's rep that it does not know of any liens existing against the property and placed there by its subcontractors or materialmen and that neither it nor its subcontractors (to the best of its knowledge) have any lawsuits against SC6/7 (the fee or the leasehold). With this rep are the items described below acceptable to your client?"

Immediately following Freed's message was the forwarded copy of Levy's email. In his email, Levy stated that "The prospective Plan Committee (post-confirmation committee) approves this." Following Levy's statement was a copy of an email Freed had sent him earlier that day, summarizing the deal she had negotiated with Stuart. Among other things,[4] the summary included the following item:

> "3. Devcon and EXDS give each other mutual releases (1) except that EXDS retains a claim for latent construction defects and (2) each party reserves all rights and defenses it has with respect to preference claims."

Stuart sent an email to Freed (Stuart's May 29th Email to Freed) in which she noted:

> "With respect to the terms of the deal that we have agreed to, the mutual releases must be of known and unknown claims except with respect to latent defects and preference claims and defenses and the parties agree to waive Civil Code Section 1542. Is this acceptable to your people? It was probably implied but I just wanted to make sure that this was included in our deal. Thanks."

Freed responded by email ("Freed's Second May 29th Email to Stuart"), stating "yes. that is fine." The parties dispute whether counsel for EXDS exceeded her authority when she agreed to the release of unknown claims and the waiver of California Civil Code Section 1542.[5]

---

[4] The other key terms of the settlement agreement included payment by EXDS to Devcon in the amount of $3,415,019, the deposit by Devcon into the mechanics' lien escrow account of lien releases and an "unconditional waiver and release upon final payment" as to SC6 and SC7, Devcon's waiver of any claims it had for interest and attorneys fees with respect to SC6 and SC7, and Devcon's withdrawal of its objection to the confirmation of EXDS' bankruptcy plan.

[5] EXDS makes much of the fact that Levy had expressly told Freed she should not agree to a general release of claims. While this fact may be relevant to the question of whether Freed believed she had authority to agree to the release, it is immaterial to the question of later ratification by EXDS (which was not represented by Levy prior to the confirmation of the Plan).

ORDER, *page 4*

On May 31, 2002, counsel for EXDS and Sharp signed and submitted to the bankruptcy court a Stipulated and Agreed Order Resolving Motion Filed by Sharp Lafayette LLC to Compel Exodus to Comply with this Court's Sale Order and for Sanctions (the "Stipulated Order Re Sharp Motion"). The bankruptcy court signed off on the Stipulated Order Re Sharp Motion that same day. Devcon was not a signatory to the order. Nonetheless, that order expressly authorized EXDS to pay Devcon $3,415,019 upon deposit by Devcon into the mechanics' lien escrow account of lien releases and an unconditional waiver and release upon final payment.

Also on May 31, 2002 Devcon delivered to escrow the releases of its mechanics liens and an unconditional waiver and release upon final payment as to SC6 and SC7, as required by the Settlement Agreement.

On June 4, 2002 EXDS wired the $3,415,019 payment to Devcon.

On June 5, 2002 the bankruptcy court issued its Findings of Fact, Conclusions of Law and Order under 11 U.S.C. § 1129(a) and (b) and Fed. R. Bankr. P. 3020 Confirming Second Amended Joint Plan of Reorganization of EXDS, Inc. and its Debtor Affiliates (the "Confirmation Order").

In September, 2003, EXDS filed an adversary proceeding against Devcon seeking over $24 million in damages, alleging among other things, breach of contract and fraudulent over-billing in connection with SC6 and SC7.[6] Devcon denies EXDS' allegations, and contends that EXDS released all known and unknown claims against Devcon related to SC6 and SC7 except claims for latent defects or preference claims. Devcon and EXDS filed cross-motions for partial summary judgment on Devcon's affirmative defenses related to the purported release of claims in connection with SC6 and SC7.

## II.   STANDARD OF REVIEW

The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett,* 477 U.S. 317, 323-24 (1986). To obtain summary judgment, a party must demonstrate that no genuine issue of material fact exists for trial, and that based on the

---

[6] EXDS also sued its former landlord, Defendant Sharp Development Company, Inc. and a related company, Defendant Sharp Lafayette, LLC ("Sharp"). EXDS' claims against Sharp are not at issue in this motion.

undisputed facts he is entitled to judgment as a matter of law. *Id.,* at 322.

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. If the moving party meets this burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. Proc. 56(e).

The non-moving party cannot defeat the moving party's proper motion for summary judgment simply by *alleging* a factual dispute between the parties. To preclude summary judgment, the non-moving party must bring forth material facts, i.e., "facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). The court must draw all reasonable inferences in favor of the non-moving party. *Masson v. New Yorker Magazine, Inc.,* 501 U.S. 496, 520 (1991); *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 588 (1986). However, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 588.

It is the court's responsibility "to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec. Service v. Pacific Elec. Contractors,* 809 F.2d 626, 630, 631 (9th Cir. 1987). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587.

### III. DISCUSSION

**A.    EXDS Ratified Ellyn Freed's Unauthorized Agreement to the Release of Unknown Claims as Part of the Settlement with Devcon on SC6 and SC7**

The undisputed facts establish that Freed and Stuart negotiated and agreed to terms for a

settlement of Devcon's mechanics' lien claims related to SC6 and SC7. Those terms were memorialized in Freed's First May 29th Email to Stuart, Stuart's May 29th Email to Freed, and Freed's Second May 29th Email to Stuart (the "Settlement Agreement").[7] After the Settlement Agreement was reduced to writing, both parties performed their obligations as specified therein.

EXDS argues that the release of unknown claims is unenforceable because attorney Ellyn Freed was not authorized to agree to a release of unknown claims as part of the Settlement Agreement.[8] It further argues, in response to this court's request for supplemental briefing on the issue, that it did not ratify Freed's unauthorized actions by paying Devcon the $3,415,019 called for in the Settlement Agreement. The court disagrees.

A client is "bound by the acts of the attorney-agent within the scope of his actual authority (express or implied) or his apparent or ostensible authority; *or by unauthorized acts ratified by the client*." *Blanton v. Womancare, Inc.*, 38 Cal.3d 396, 403 (1985) (emphasis added); *see also* CAL.CIV.CODE, § 1589 ("A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, *or ought to be known*, to the person accepting." (Emphasis added.)).[9]

EXDS was obligated by Paragraph 2.A.(4) of the Mechanics' Lien Order to notify certain

---

[7] EXDS argues that the terms of the settlement agreement are fully set forth in Freed's May 29, 2002 letter to Stuart. However, that letter refers to "an agreement reached May 29, 2002" which it calls "the Settlement Agreement." The use of the word "reached" in the past tense shows that the letter itself was not the Settlement Agreement. Moreover, the letter does not itself purport to summarize all the terms of the Settlement Agreement (as do the emails). Instead, the letter expressly states that its purpose is "to request your assistance and cooperation in finalizing those arrangements." The referenced "arrangements" were described as "arrangements to make the Final Lien Payment to the Contractor." Thus, the letter was merely a communication about performing the Settlement Agreement, and not a reduction to writing of the agreement itself.

[8] It is undisputed that Freed had been given *some* degree of authority to negotiate a settlement of Devcon's mechanics lien claims. Solely for the purposes of summary judgment, because there is a factual dispute regarding the scope of that Freed's authority, the court will assume that Freed was not authorized by EXDS to agree to a release of unknown claims as part of the settlement.

[9] This is true even in the context of a settlement agreement entered into by an attorney with *no authority* to act on the person's behalf. *See Villa v. Cole,* 4 Cal.App.4th 1327, 1336-1337 (1992) (finding a defendant could not disavow a settlement entered into by a co-defendant and the plaintiff, in which the co-defendant's counsel had obtained dismissal on his behalf, where he had "accepted the benefits of his dismissal, [and] did nothing to set aside or repudiate the settlement of which that dismissal was a part.").

entities–the Notice Parties[10]–of the *terms* of any proposed settlement of a mechanics' lien claim. In order to fulfill this obligation with regard to the Devcon settlement, EXDS needed to apprise itself of all the terms of that settlement so it could notify the Notice Parties of those terms *before* it consummated the settlement with Devcon. Further, EXDS had a direct duty of truthfulness and candor to the bankruptcy court. *See, e.g., In re Soost*, 290 B.R. 116, 125 (Bankr.D.Minn. 2003). Again, in order to fulfill that duty of candor when, for example, it submitted the Stipulated Order Re Sharp Motion, EXDS should have apprised itself of all the terms of its settlement with Devcon so that it could inform the court that signing the order would obligate EXDS to consummate a settlement which included a release of claims owned by the bankruptcy estate. Thus, by the time EXDS consummated its settlement with Devcon, it "ought to have known" all the terms of that settlement.

The undisputed facts also show that EXDS accepted the benefits of the Settlement Agreement. Pursuant to the Settlement Agreement, Devcon released its mechanics liens against SC6 and SC7, as well as any claims it may have had for interest or attorneys fees with respect to SC6 and SC7. EXDS made no attempt to prevent the release of those mechanics liens, nor to restore to Devcon the right to pursue any claims it might have had for interest and/or attorneys fees with respect to SC6 and SC7. Instead, it accepted Devcon's tender of the release of mechanics liens into escrow, performed its own obligation to pay Devcon $3,415,019, and allowed confirmation of the Plan to proceed (which resulted in a legal bar to any claim for interest and/or attorneys fees Devcon otherwise had). Devcon's release of its mechanics' liens, and of any claims for interest and attorneys fees, benefitted EXDS because: 1) had Devcon not released the liens, the sale of SC6 and SC7 likely would not have been consummated at that time; 2) EXDS saved the attorneys fees it would have incurred to defend against a claim by Devcon for interest and attorneys fees in connection with SC6 & SC7; and 3) EXDS eliminated the possibility that Devcon might succeed and obtain a judgment

---

[10] As defined by the Mechanics' Lien Order, the "Notice Parties" were (i) the Office of the United States Trustee; (ii) counsel to the Creditors' Committee; (iii) affected landlords and (iv) counsel to the Debtors' postpetition lenders.

against EXDS for such interest and/or attorneys fees.[11] EXDS also benefitted from Devcon's withdrawal of its objection to the Plan. EXDS' acceptance of these benefits was sufficient to constitute "consent" to the release of unknown claims under California Civil Code section 1589.

Because EXDS fully accepted the benefits of the Settlement Agreement at a time that it ought to have known that the settlement included a release of any unknown claims against Devcon (other than claims for latent construction defects and preference claims), as a matter of law EXDS ratified the Settlement Agreement and cannot now disavow the release of unknown claims contained therein.

**B.  EXDS Is Collaterally Estopped from Challenging the Plan Confirmation, Which Implicitly Approved the Settlement Agreement by Excepting it from the Litigation Claims Retained by EXDS**

EXDS also argues that the release of unknown claims is unenforceable because it was not expressly approved by the bankruptcy court. Specifically, EXDS contends that the Confirmation Order did not include any approval of that release. Again, this court disagrees.

The Mechanics' Lien Order gave EXDS advance authorization to settle and compromise[12] mechanics lien claims without further court order subject to EXDS following certain notice procedures. Pursuant to the authority granted by the Mechanics' Lien Order, on May 29, 2002 Freed and Stuart finalized their negotiation of EXDS' Settlement Agreement with Devcon.

EXDS arguably gave notice of its proposed settlement with Devcon to counsel for the

---

[11] For example, Devcon was entitled to seek interest on the $3,415,019 EXDS owed Devcon on SC6 and SC7, at either the contract rate or a rate of 10% per annum (if there was no contract rate), for the 20 days between the time Devcon filed its mechanics' liens (which state that the money was then "currently due, owing and unpaid") and the time that EXDS filed its bankruptcy petition. *See Key Bank Nat'l Ass'n v. Milham (In re Milham)*, 141 F.3d 420, 422-23 (2d Cir. 1998) ("Prepetition interest is generally allowable to the extent and at the rate permitted under the applicable nonbankruptcy law, including the law of contracts."); *and* CAL. CIV. CODE § 3289 ("[i]f a contract entered into after January 1, 1986, does not stipulate a legal rate of interest, the obligation shall bear interest at a rate of 10 percent per annum after a breach."). At 10 % per annum for 20 days, Devcon could have sought $18,712 in interest. The amount of the claim may have been substantially higher if the contract specified a higher interest rate and/or the payment was due earlier than September 6, 2001. (If Devcon had succeeded in a claim under California Civil Code section 3260 (g), the interest rate would instead have been 2% per month (24% per annum) and Devcon would have been entitled to attorneys' fees as well.)

[12] EXDS takes the position that the Mechanics' Lien Order did not authorize EXDS to settle any of its own claims against third parties. However, the word "compromise" implies a negotiation in which *both* sides make concessions. Moreover, in light of the security provided by a mechanics' lien, there would be no reason for the holder of a mechanics' lien to make *any* concession unless they received some kind of concession from EXDS as well. Thus, inherent in the authority to settle the mechanics' lien claims was the authority to settle any claims EXDS had against the mechanics' lien holders.

creditors' committee and the post-petition lenders.[13] But in order to activate the automatic approval of the Mechanics' Lien Order, EXDS was also required to give notice to the U.S. Trustee and any affected landlords. The record is devoid of any evidence that EXDS ever complied with that court-ordered requirement.

On June 4, 2002, after Devcon had deposited in escrow the lien releases and an unconditional waiver and release upon final payment (as it had agreed to do under the terms of the Settlement Agreement), EXDS made the $3,415,019 payment to Devcon that was called for in the Settlement Agreement. At that time, the only authority EXDS had from the bankruptcy court to make this payment was in the Stipulated Order Re Sharp Motion, and that authority depended on Devcon first voluntarily depositing into escrow the lien releases and unconditional waiver and release upon final payment. Devcon was only obligated to deposit those documents into escrow by virtue of the Settlement Agreement. Thus, the bankruptcy court arguably approved the Settlement Agreement, and hence the release of unknown claims, when it signed off on the Stipulated Order Re Sharp Motion. However, because the court finds definitive bankruptcy court approval of the release of unknown claims in the plan confirmation, the court does not rest its opinion on the Stipulated Order Re Sharp Motion.

On June 5, 2002, the bankruptcy court issued its order confirming the Plan. Section 4.8(a) of the Plan provides, in relevant part:

> Except as otherwise provided in * * * * any document, instrument, release or other agreement entered into in connection with the Plan, * * * * the Debtors and their Estates shall retain the Litigation Claims."

---

[13] Notice of EXDS' proposed settlement with Devcon was given to counsel for the creditors' committee and the post-petition lenders by virtue of Ellyn Freed's May 29, 2002 email to Richard Levy in which she summarized the terms of the settlement. That email implicitly disclosed that EXDS was agreeing to release *unknown* claims by carving out from the "mutual releases" any claims for latent construction defects, which are inherently unknown claims. This carve out would not have been necessary if the releases did not include unknown claims. Thus, both the creditors' committee and the post-petition lenders were on notice that the terms of the Devcon Settlement Agreement included the release of unknown claims. Richard Levy's subjective understanding that the reference to "mutual releases" did not mean a "general" release lacks both credibility and relevance. The Mechanics' Lien Order required only that EXDS give counsel for the creditors' committee and the post-petition lenders notice of the terms. Freed's email was arguably sufficient "notice" of the release of unknown claims to satisfy the requirements of the Mechanics' Lien Order. However, since there is no evidence that notice was given to the Trustee, neither notice to the creditors nor lack thereof is outcome determinative here.

ORDER, *page 10*

1  The Plan does not limit the excepted releases of claims to those which were already duly approved
2  by the bankruptcy court. Thus, the bankruptcy court's confirmation of the Plan effectively approved
3  the Settlement Agreement EXDS and Devcon entered into in connection with the Plan,[14] regardless
4  of whether EXDS itself had fully complied with the notice requirements of the Mechanics' Lien
5  Order, and regardless of whether the bankruptcy court actually considered all the terms of the
6  Settlement Agreement.

7  To the extent the bankruptcy court erred by confirming the Plan without first fully reviewing
8  all of the terms of the Settlement Agreement, EXDS' remedy was an appeal, not a collateral attack in
9  this action. *See Trulis v. Barton*, 107 F.3d 685, 691 (9th Cir. 1995) (noting that creditors who do not
10 wish to release third party debtors pursuant to the principal debtor's plan of reorganization should
11 object to confirmation of the plan; "The point is that only a direct attack is available and collateral
12 attack is unavailable."); *see also, Great Lakes Higher Educ. Corp. v. Pardee (In re Pardee)*, 193
13 F.3d 1083, 1086 (9th Cir. 1999) (if creditor fails to timely object to a plan or appeal a confirmation
14 order, "it cannot later complain about a certain provision contained in a confirmed plan, even if such
15 a provision is inconsistent with the Code."); *see also, In re Szostek*, 886 F.2d 1406, 1406 (3d Cir.
16 1989) (noting that, after a bankruptcy plan is confirmed, the policy favoring the finality of
17 confirmation is stronger than a court's obligation to verify the plan's compliance with the code). The
18 case relied on by EXDS, *Protective Committee for Independent Stockholders of TMT Trailer Ferry,*
19 *Inc. v. Anderson* (1968) 390 U.S. 414, involved a direct appeal rather than a collateral attack, and is
20 thus inapplicable here.

22  **IV. CONCLUSION**
23  It is undisputed that Ellyn Freed negotiated and agreed to a mutual release of unknown claims
24 (other than claims for latent construction defects and preferences) as part of the settlement of
25 Devcon's mechanics lien claims for SC6 and SC7. Based on the undisputed facts, the court finds

---

[14] That the Settlement Agreement was entered into "in connection with the Plan" is evident from the terms of Settlement Agreement itself, which expressly required Devcon to withdraw its objection to the confirmation plan. EXDS has submitted no competent evidence that would tend to show the Settlement Agreement was not entered into in connection with the Plan. Thus, there is no genuine issue of material fact as to this point.

ORDER, *page 11*

that EXDS "ought to have known" about that term of the Settlement Agreement at the time it consummated the settlement, because it had an obligation to apprise itself of the settlement terms so it could notify the Notice Parties and the bankruptcy court of those terms. Thus, when EXDS consummated the Settlement Agreement by paying Devcon the $3,415,019, it ratified the release of unknown claims related to SC6 and SC7. The bankruptcy court approved the Settlement Agreement when it confirmed the Plan, and that approval cannot be collaterally attacked in this action.

Having released unknown claims against Devcon in connection with SC6 and SC7, EXDS is barred from suing Devcon for anything other than claims for latent construction defects and preference claims (which were expressly excepted from the release).

For the reasons discussed herein, partial summary judgment is GRANTED in favor of Devcon on Counts I, II, III, IV, V, VIII, IX and X of EXDS' First Amended Complaint with regard to SC6 and SC7.

Dated:   *7/25/05*

                                                               */s/ Patricia V. Trumbull*
                                                               PATRICIA V. TRUMBULL
                                                               United States Magistrate Judge