United States District Court

For the Northern District of California

1
2
3
4
5
6
7                    UNITED STATES DISTRICT COURT
8                   NORTHERN DISTRICT OF CALIFORNIA
9                        SAN JOSE DIVISION
10   In re:                              )   Case No.: C 05-0787 PVT
                                         )
11                                       )   **ORDER DENYING PLAINTIFF'S MOTION TO**
     EXDS, Inc. (f/k/a EXODUS            )   **DISQUALIFY DEFENDANTS' COUNSEL**
12   COMMUNICATIONS, INC.), et al.,      )
                                         )
13                    Debtor             )
                                         )
14   _____     )
                                         )
15   EXDS, Inc.,                         )
                                         )
16                    Plaintiff,         )
                                         )
17         v.                            )
                                         )
18   DEVCON CONSTRUCTION, INC., et al.,  )
                                         )
19                    Defendants.        )
                                         )
20   _____     )
21         On June 20, 2005, Plaintiff EXDS, Inc. ("EXDS") filed a Motion to Disqualify Defendants'

22   Counsel.  After EXDS filed the motion, it became evident that the parties were about to embark on

23   extensive discovery and motion work in connection with a disqualification motion that appeared

24   unwarranted on its face.  The court vacated the hearing schedule.  However, the court does not take

25   lightly claims of attorney misconduct.  Thus, rather than summarily denying the motion, the court

26   solicited supplemental briefing from EXDS in order to allow EXDS an opportunity to supply the

27   elements missing from its moving papers if it could do so.  EXDS has now filed its supplemental

28   briefing.  Having reviewed the papers submitted by EXDS, the court finds it appropriate to rule on

ORDER, *page 1*

1    the motion without further briefing or oral argument.  Based on the briefs and supporting

2    declarations submitted by EXDS,

3         IT IS HEREBY ORDERED that EXDS's motion is DENIED for the reasons discussed

4    herein.

5    **I.**      **BACKGROUND**

6         On September 26, 2001, EXDS filed for bankruptcy under Chapter 11 of the Bankruptcy

7    Code in the United States Bankruptcy Court for the District of Delaware.[1]  On January 22, 2002, the

8    bankruptcy court approved the sale of substantially all of EXDS' operating assets to Cable &

9    Wireless PLC and Digital Island, Inc (collectively "C&W").  On June 5, 2002, the bankruptcy court

10   issued its order confirming EXDS' plan of reorganization.  Under that plan, EXDS continues to exist

11   solely for the limited purposes of distributing all of the assets of the bankruptcy estate.  The plan also

12   allows EXDS to pursue claims it has against third parties.  The plan does not authorize EXDS to

13   continue to operate internet data centers or engage in any other business endeavors.

14        On September 25, 2003, EXDS filed an adversary proceeding against Defendants Devcon

15   Construction, Inc. ("Devcon") and Sharp Development Company, Inc. f/k/a Sharp Lafayette LLC

16   ("Sharp").  In its 51 page complaint, EXDS described its construction agreements with Devcon and

17   its lease agreements with Sharp, as well as numerous specific details regarding various issues related

18   to those agreements.  EXDS filed its complaint in the public docket in the bankruptcy action.

19        Sometime in the spring or early summer of 2004, Devcon's CEO Gary Filizetti asked one of

20   EXDS' former employees, Janice Fetzer, if she would be willing to talk to Defense counsel.  She

21   agreed.  Shortly thereafter she was contacted by one of Sharp's attorneys, Jay Ross.  Fetzer agreed to

22   meet with him, and to see if she had any materials pertaining to certain projects at issue in this

23   lawsuit.  Fetzer flew to California from Reno at Defendants' expense to meet with Defense counsel.

24   On June 9, 2004, in preparation for the meeting, Fetzer printed out copies of documents she still had

25   in her possession (in electronic form) related to some of the projects at issue in this lawsuit.  The

26   next day she met with Defense counsel for "a couple of hours."  Fetzer has also had many follow-up

27

28        [1]      Earlier this year, this action was withdrawn from the bankruptcy court and transferred to
this court.

1  communications with Defense counsel, and gave Defense counsel recommendations for potential

2  expert witnesses.

3         EXDS's counsel also attempted to interview Fetzer.  She declined.

4         On June 20, 2005, EXDS filed the instant motion.  Attached to Richard Levy's declaration in

5  support of the motion were various documents EXDS claims are confidential EXDS documents that

6  Fetzer gave to Defense counsel.  Nothing on the face of the documents states they are confidential.

7  EXDS filed Levy's declaration, with the purportedly confidential EXDS documents, in the public

8  docket in this action.  In support of its supplemental brief, EXDS attached two leases as exhibits to

9  another declaration by Richard Levy (one appears to be a general form of lease, the other purports to

10  be a copy of a lease between EXDS and 300 Boulevard East LLC).  Again, EXDS filed Levy's

11  second declaration, with the two leases attached, in the public docket in this action.

12  **II.      STANDARDS FOR DISQUALIFYING COUNSEL**

13         Under California law, the factors considered in a motion to disqualify opposing counsel vary

14  depending on the factual circumstances.  Different factors are considered, or are given varying

15  degrees of weight, depending on whether: 1) the attorney previously represented the party seeking

16  disqualification (direct conflict of interest cases); 2) one of the attorney's employees or experts

17  previously worked for an attorney for the party seeking disqualification (indirect conflict of interest

18  cases); 3) through other means the attorney obtained relevant privileged information belonging to the

19  party seeking disqualification; or 4) other unique circumstances exist which impinge on the integrity

20  of the judicial process.[2]

21         Only in direct conflict of interest cases is disqualification absolutely mandated.  In other

22  circumstances, an attorney's exposure to an adversary's privileged information does not necessarily

23

24         [2]      One such circumstance is where counsel for a party is also a witness. EXDS's reference
    to the *Comden v. Superior Court* case is ironic, given that the California Supreme Court there held
25  disqualification of two attorneys was mandated because the attorneys were likely to be called as
    witnesses on behalf of their client. *See Comden v. Superior Court*, 20 Cal.3d 906 (1978).  In the present
26  case EXDS' lead counsel witnessed facts relevant to Devcon's affirmative defense of release.  While
    California has loosened the rules in this regard (now requiring only that an attorney obtain his client's
27  informed written consent before testifying before a jury in a matter in which he is also trial counsel), the
    concerns underlying the former rule remain.  "An attorney who attempts to be both advocate and witness
28  impairs his credibility as witness and diminishes his effectiveness as advocate." *Comden v. Superior
    Court*, 20 Cal.3d 906, 912 (1978).

United States District Court

For the Northern District of California

warrant disqualification:

> "Mere exposure to the confidences of an adversary does not, standing alone, warrant disqualification. Protecting the integrity of judicial proceedings does not require so draconian a rule. Such a rule would nullify a party's right to representation by chosen counsel any time inadvertence or devious design put an adversary's confidences in an attorney's mailbox. Nonetheless, we consider the means and sources of breaches of attorney-client confidentiality to be important considerations."  *Widger v. Owens-Corning Fiberglass Corp. (In re Complex Asbestos Litig.)*, 232 Cal.App.3d 572, 589 (1991).

In evaluating a motion to disqualify opposing counsel under California law, courts start with the proposition that "[t]he right of a party to be represented in litigation by the attorney of his or her choice is a significant right and ought not to be abrogated in the absence of some indication the integrity of the judicial process will otherwise be injured...." *Johnson v. Superior Court*, 159 Cal.App.3d 573, 580 (1984) (citation omitted); *see also, Gregori v. Bank of America*, 207 Cal.App.3d 291, 300 (1989) ("[I]t must be kept in mind that disqualification usually imposes a substantial hardship on the disqualified attorney's innocent client, who must bear the monetary and other costs of finding a replacement.")

Courts also consider whether the motion to disqualify is improperly being used for purely tactical reasons: "'After all, in cases that do not involve past representation [direct conflict of interest cases] the attempt by an opposing party to disqualify the other side's lawyer must be viewed as part of the tactics of an adversary proceeding. As such it demands judicial scrutiny to prevent literalism from possibly overcoming substantial justice to the parties.'" *See Graphic Process Co. v. Superior Court*, 95 Cal.App.3d 43, 52 n. 5 (1979), quoting *J.P. Foley & Co., Inc. v. Vanderbilt*, 523 F.2d 1357, 1360 (2d Cir. 1975); *see also Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 441 (1985) (Brennan, J., concurring) ("the tactical use of attorney-misconduct disqualification motions is a deeply disturbing phenomenon in modern civil litigation.").

Without more, an attorney's *ex parte* contact with an opposing party's former employee is insufficient grounds for disqualification.  *See Continental Ins. Co. v. Superior Court*, 32 Cal.App.4th 94, 118-21 (1995) (Rule 2-100 of the California Rules of Professional Conduct, which prohibits attorneys from communicating with a represented party without the consent of that party's lawyer, does not apply to the party's former employees).  California cases have stressed that prohibiting

United States District Court

For the Northern District of California

attorneys from contacting an opponent's former employees would unfairly hinder litigants from investigating and pursuing factual evidence relevant to their case. *See id.* at 120-121 (noting that *ex parte* contacts with an opponent's former employees facilitates identification of those witnesses with relevant knowledge and reduces the need for expensive and unnecessary formal depositions); and *Bobele v. Superior Court*, 199 Cal.App.3d 708, 713-714 (1988) (noting that limiting attorneys' contact with opponents' former employees to formal depositions makes litigation too costly).[3]

And there appears to be no general duty to "warn" the opposing party's former employee not to disclose confidential or privileged information. On the contrary, California courts have eschewed any duty of that kind:

> "We emphasize that our analysis does not mean that there is or should be any broad duty owed by an attorney to an opposing party to maintain that party's confidences in the absence of a prior attorney-client relationship. The imposition of such a duty would be antithetical to our adversary system and would interfere with the attorney's relationship with his or her own clients. The courts have recognized repeatedly that attorneys owe no duty of care to adversaries in litigation or to those with whom their clients deal at arm's length."
> *Widger*, 232 Cal.App.3d at 588.

Instead, it is incumbent on the former employer to seek a protective order if it is concerned that there is a risk that a former employee might disclose privileged information. *See Continental Ins. Co.*, 32 Cal.App.4th at 119.[4] EXDS did not seek any such protective order in this action.

In support of its contention that an attorney must warn an opposing parties' former employee not to disclose confidential information, EXDS cites *Camden v. Maryland*, 910 F.Supp. 1115 (D. Md. 1996) (applying "no contact" rule to an opposing party's former employee who was *extensively* exposed to confidential client communications, and disqualifying counsel who had interviewed the former employee without warning him not to disclose confidential information). However, that case was decided under Maryland law, and is not consistent with California's rule placing the burden on the former employer to seek a protective order if it has concerns that a former

---

[3]     EXDS complains that the information Defense counsel obtained from Fetzer aided their discovery strategy. However, the *Continental Ins. Co.* and *Bobele* cases show that California allows *ex parte* contacts with an opponent's former employees precisely for that purpose (absent improper conduct, such as seeking and using another party's privileged information).

[4]     This is exactly the procedure the former employer used in *In re Data General Corporation Antitrust Litigation*, 1986 U.S. Dist. LEXIS 21923 (N.D. Cal. 1986), cited by EXDS.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    employee is at risk of disclosing confidential information.[5]

2         Further, contrary to EXDS' argument, in the context of attorney disqualification (other than

3    direct conflict of interest cases) California *does* have a "no harm, no foul" rule:

4         "Since the purpose of a disqualification order must be prophylactic,
           not punitive, the significant question is whether there exists a genuine
5         likelihood that the status or misconduct of the attorney in question will
           affect the outcome of the proceedings before the court." *Gregori*, 207
6         Cal.App.3d at 308-09.[6]

7         Even where a court finds attorney misconduct occurred, "[d]isqualification is inappropriate,

8    however, simply to punish a dereliction that will likely have no substantial continuing effect on

9    future judicial proceedings." *Gregori*, 207 Cal.App.3d at 309 (noting that where attorney

10   misconduct does not affect the outcome of the proceedings, sanctions other than disqualification,

11   such as fee awards, are the proper remedy.)

12   **III.    DISCUSSION**

13        EXDS concedes that Defense counsel are allowed to contact EXDS' former employees, but

14   argues that Defense counsel should be disqualified because they improperly sought and obtained

15   confidential and/or privileged information from Fetzer.[7]  However, EXDS fails to show there is any

16

17        [5]    *Camden* is also factually distinguishable.  In that case Camden brought an employment
18   discrimination suit against her former employer, Bowie State University ("BSU").  Camden's attorney
     contacted Richard Redmond, BSU's former affirmative action specialist who had been responsible for
19   handling Camden's claims.  Redmond had regularly discussed Camden's claims with BSU's attorneys
     while he still worked for BSU.  When Camden had originally initiated her claim, BSU told her attorney
20   that Redmond was the "principal contact person," but also asked Camden's attorney to refrain from any
     *ex parte* contacts with him.  Thus, when Redmond later left BSU's employ, Camden's attorney knew
21   he had been extensively exposed to BSU's privileged communications regarding the defense of
     Camden's case.

22        [6]    In *Widger*, a different California court expressed concern that the *Gregori* court's
23   emphasis on attorney "misconduct" and use of "improper means" detracted from the prophylactic
     purpose of disqualification.  *Widger*, 232 Cal.App.3d at 591-92.  It noted that such a formulation would
24   not cover a situation involving misconduct by an attorney's employee, which was there the case.  That
     distinction is not material to the present motion.  Nor is that court's concern regarding preserving public
25   trust and the integrity of the judicial system, which would arise only if it were shown that Fetzer
     disclosed privileged information to Defense counsel.  Finally, no issue has been raised here regarding
26   whether EXDS must disclose actual information covered by a privilege, rather than just the general
     nature of the information.

27        [7]    EXDS also seems to argue that purported discrepancies between Fetzer's declarations
28   and her deposition testimony support disqualification of Defense counsel.  While any such discrepancies
     may certainly be used for impeachment purposes, EXDS cites no case in which a court disqualified an
     attorney based on discrepancies between a witness' declarations and oral testimony.

reason to suspect Defense counsel sought to obtain, or that Fetzer in fact disclosed to them, any of EXDS' confidential and/or privileged information. Nor has EXDS shown that any "remedial" relief is warranted here.

### A. EXDS HAS NOT SHOWN THAT DEFENSE COUNSEL AFFIRMATIVELY *SOUGHT* ANY CONFIDENTIAL OR PRIVILEGED INFORMATION FROM FETZER

The sole basis for EXDS' claim that Defense counsel affirmatively *sought* confidential[8] and/or privileged information from Fetzer is the fact they knew the nature of EXDS' "high-tech business in Silicon Valley and Ms. Fetzer's role within the company," and their purported failure to warn Fetzer not to disclose any confidential and/or privileged information. However, Fetzer's work did not involve the "high tech" part of EXDS' business. She was the Vice President of Facilities, and later Vice President of New Project Development, in which capacities she oversaw facilities and real estate, including overall project management for constructing and outfitting the buildings for EXDS' internet data centers. And as discussed above, attorneys have no duty to warn an opponent's former employee not to disclose confidential information. Neither Defense counsel's knowledge of the nature of EXDS' business and Fetzer's role therein, nor any failure to warn Fetzer not to disclose any confidential and/or privileged information, evidences any *intent* to obtain confidential or privileged information. A contrary finding would effectively impose a rule requiring a warning which is not currently required under California law.

### B. EXDS HAS NOT SHOWN THAT FETZER DISCLOSED ANY CONFIDENTIAL INFORMATION TO DEFENSE COUNSEL

EXDS proffers five bases for its contention that the information Fetzer disclosed to Defense counsel was confidential: 1) Fetzer herself believes some of the information she disclosed was confidential; 2) the nature of the information in Fetzer's declarations; 3) Fetzer purportedly told

---

[8]     While the court is unaware of any case in which a court *disqualified* counsel based on counsel having obtained non-privileged, but commercially confidential, information from an opposing party's former employee, such a result *might* be appropriate if the facts supported a finding that the integrity of the judicial process had been injured. Here, it has not even been established that Fetzer disclosed any commercially confidential information. The "self-help" cases cited by EXDS did not involve any order disqualifying counsel, nor discuss the standards for such an order, and thus are of little assistance. *See Pillsbury, Madison & Sutro v. Schectman*, 55 Cal.App.4th 1279 (1997); and *Conn v. Superior Court*, 196 Cal.App.3d 774 (1987).

United States District Court

For the Northern District of California

1    Defense counsel "everything . . . [she] knew that they asked her about;" 4) Defense counsel's refusal

2    to turn over their notes of conversations with Fetzer; and 5) Defense counsel's failure to warn Fetzer

3    not to disclose confidential information.  None of the foregoing show that Fetzer disclosed any

4    information to Defense counsel in which EXDS had any confidentiality interest at the time of the

5    disclosure.  This is particularly evident given EXDS' disclosure of similar information in the public

6    record well before Defense counsel interviewed Fetzer.

7        Fetzer's belief that she disclosed confidential information to Defense counsel is not sufficient

8    to establish that the information was in fact confidential at the time she disclosed it.[9]  As EXDS

9    points out, Fetzer "is not an expert on what can and cannot be disclosed."  And even for information

10   that may have been confidential at the time Fetzer worked at EXDS, she would not know if it lost its

11   confidential status through EXDS' later actions.  The question is not whether Fetzer thinks she

12   violated her confidentiality agreement,[10] but whether the information was in fact confidential at the

13   time she disclosed it to Defense counsel in 2004, and if so, whether Defense counsel should have

14   known it was confidential.[11]

15       EXDS also points to the nature of the information in Fetzer's two declarations.  But the

16   information in Fetzer's declarations does not appear to be confidential, and EXDS has not shown

17

18       [9]    The analysis might be different if Fetzer were also a party to this action.  In that case, her
     testimony that she disclosed confidential information would likely be an admission that was binding on
19   her and her counsel.  But Fetzer is not a party in this case, and in any event her statements do not bind
     Defendants.

20       [10]   EXDS argues it is still entitled to enforce the confidentiality agreements Fetzer signed.
21   EXDS cites to Section 2.1(b)(v) of its Asset Purchase Agreement with C&W as evidence that Fetzer's
     confidentiality and severance agreements were not sold to C&W.  Section 2.1(b)(v) provides only that
22   the "Purchased Assets" shall not include any of EXDS' contracts other than the "Assigned Contracts."
     The Asset Purchase Agreement provides that the term "Assigned Contracts" shall "have the meaning
23   set forth in Section 2.3(d)."  Whether any given contract is an "Assigned Contract" under Section 2.3(d)
     cannot be determined without reference to numerous schedules as well as evidence of whether later
24   events occurred, none of which has been provided to the court.  Thus, EXDS has not shown that it
     retains any right to enforce the confidentiality agreement with Fetzer with regard to events occurring
25   after the sale of assets to C&W.  In any event, whether EXDS has the right to enforce its prior agreement
     with Fetzer is irrelevant to the question of whether Fetzer possessed any information in which EXDS
26   continued to have any confidentiality interest, and if so, whether Defense counsel had reason to believe
     she did.

27       [11]   The fact Fetzer signed confidentiality agreements does not establish that she was in fact
28   exposed to any truly confidential information while at EXDS.  Not all information a business may
     consider confidential qualifies as confidential with respect to those who are not signatories to a
     confidentiality agreement.

otherwise.  Moreover, EXDS never sought an order to seal Fetzer's declarations.  Thus, it is apparent that EXDS does not truly believe there is any information of a confidential nature in the Fetzer declarations.

Even assuming Fetzer told Defense counsel "everything she knew that they asked about,"[12] this would only show she disclosed confidential information if she had in her possession information that was confidential at that time, and if Defense counsel asked about such information.  EXDS has not shown either to be the case.  EXDS' public disclosure in its complaint of detailed information regarding its leasing and construction activities belies its claim that it considers such information to be confidential.  Similarly, EXDS' public filing of copies of documents Fetzer gave Defense counsel shows it does not consider those documents to be confidential.  In sum, none of the information which Fetzer testified Defense counsel inquired about appears to be substantially different from the information currently on file in the public record which EXDS has never sought to have sealed.  Under these circumstances, it is hard to see how any of the information or documents[13] Fetzer disclosed to Defense counsel was confidential.  Nor does the mere fact that Fetzer met with Defense counsel several times over the course of year in an effort to "help" them[14] imply that the information she gave them was somehow confidential.

Neither Defense counsel's purported "failure to warn," nor their refusal to turn over their notes to EXDS' counsel, creates any inference that they obtained confidential information from Fetzer.  As discussed above, California courts put the burden on the employer to obtain a protective order if it is concerned there is a risk that its former employees might disclose privileged

---

[12]    *Contrary* to EXDS' representation to this court, Fetzer did not say at her recent deposition that she told Defense counsel "everything . . . I knew that they asked about."  She expressly stated she should not have used the word "everything" in her prior testimony, and she did not use it as part of her statement that she told Defense counsel "what I knew that they asked about."  Nor has EXDS shown that Defense counsel asked her about any confidential information.

[13]    In fact, Section 24.11 of the 300 Boulevard East lease expressly anticipates that it might become public, and the language suggests that it was the landlord seeking confidentiality, not EXDS.

[14]    There is no rule against an attorney accepting such help from an opposing party's former employee.  The unpublished case EXDS cites regarding an attorney hiring an opposing party's former employee as an expert is inapplicable here, as well as not properly citable.  This court is applying California law, and thus will not rely on a case on which California courts are precluded from relying.  In any event, the additional risks created when expert fees are paid to an opposing party's former employee are simply not present when no such fees are paid.

1    information.  *Continental Ins. Co.*, 32 Cal.App.4th at 119.  And, absent evidence of misconduct (or a

2    showing that the circumstances justify discovery of non-opinion work product), Defense counsel are

3    entitled to withhold their work product from opposing counsel.

4         EXDS complains that it does not know what information Fetzer gave Defense counsel.

5    However, it knows what kind information Fetzer had access to in the course of her employment with

6    EXDS.  And it has deposed her twice.  Thus, EXDS should have been able to articulate what kind of

7    information Fetzer might have had in which EXDS had a confidentiality interest in the Summer of

8    2004.  EXDS has simply failed to do so.  For example, EXDS has not explained how it could have

9    benefitted commercially, after its bankruptcy, from maintaining the confidentiality of any

10   information that Fetzer may have disclosed to Defense counsel in 2004.  EXDS concedes it is no

11   longer in the internet data center business, but claims that for the past three years it has been in the

12   "litigation business."[15]  However, the reasons for protecting a corporation's proprietary information

13   do not apply to litigation.

14        The law generally protects a company's trade secrets in order to preclude the company's

15   competitors from obtaining an unfair commercial advantage.  *See DVD Copy Control Association,*

16   *Inc. v. Bunner*, 31 Cal.4th 864, 880-882 (2003) (noting that public policies underlying trade secret

17   law are intended to protect the owner's moral entitlement to the fruits of his or her labors, to

18   encourage research and invention, and to enforce a standard of commercial ethics); *see also, Calcor*

19   *Space Facility, Inc. v. Superior Court* (1997) 53 Cal.App.4th 216, 226 ("courts should be

20   particularly sensitive to the potential for creating an unfair commercial advantage to a party seeking

21   discovery of [trade secret] materials").  Even then, the party seeking protection must establish that it

22   made reasonable efforts to maintain secrecy.[16]  *See, e.g.,* Cal.Civ.Code § 2436.1(d)(2).

23        In the litigation context, absent a privilege, the law allows a company's opponent to obtain

24   discovery of relevant information, regardless of whether it discloses the company's proprietary or

---

25

26        [15]    The court does not consider litigation to be a "business."  Courts provide a venue for
     resolving legal disputes, not for running businesses.

27        [16]    EXDS has made no showing that it has made any effort after filing bankruptcy to keep
28   confidential any of the information Fetzer had access to while at EXDS, such as: 1) lease negotiations;
     2) facilities construction; and/or 3) EXDS' business strategies regarding either lease issues or facilities
     construction.

1  trade secret information (though upon a showing of good cause courts will enter protective orders to

2  preclude the company's competitors from obtaining and using the information for business

3  purposes).  *See Hypertouch, Inc. v. Superior Court*, 128 Cal.App.4th 1527, 1555 n.16 (2005); *see*

4  *also, Beckman Indus., Inc. v. International Ins. Co.,* 966 F.2d 470, 476 (9th Cir. 1992) ("Broad

5  allegations of harm, however, unsubstantiated by specific examples or articulated reasoning, do not

6  satisfy the Rule 26(c) test.").

7       Finally, even if any of the information Fetzer disclosed to Defense counsel *was* confidential,

8  there is no reason to think Defense counsel knew it was confidential.  EXDS' public disclosure of

9  detailed lease and construction information in its complaint, the lack of any confidentiality marks on

10  the face of the documents Fetzer provided, and the fact EXDS did not continue as an operating

11  company after its bankruptcy, would lead a reasonable attorney to believe that EXDS no longer had

12  any confidentiality interests in the information, if it ever did.  EXDS neither articulates nor provides

13  factual support for its contrary claim that Defense counsel "must have known" that the information

14  was somehow confidential.

### C.  THERE IS NO REASON TO SUSPECT FETZER DISCLOSED ANY PRIVILEGED INFORMATION TO DEFENSE COUNSEL

17       EXDS claims Fetzer must have divulged some privileged information to Defense counsel

18  because she participated in meetings with EXDS' attorneys while she worked there.  EXDS seems to

19  be under the impression that *any* information mentioned during a meeting with counsel is privileged.

20  That is not the standard.

21       The attorney-client privilege covers *confidential communications* between a client and its

22  lawyer.  *See* CAL.EVID.CODE § 954.  The privilege is strictly construed in the interest of bringing to

23  light relevant facts.  *See People ex rel. Dept. of Public Works v. Donovan*, 57 Cal.2d 346, 354

24  (1962).  The privilege does not embrace matters that are otherwise unprivileged merely because the

25  client communicated those matters to its attorney.  *Id*. at 355.  The attorney-client privilege does not

26  apply where the attorney acts merely as a negotiator or business agent.  *See Montebello Rose Co. v.*

27  *Agricultural Labor Relations Bd.*, 119 Cal.App.3d 1, 32 (1981); and *Watt Industries, Inc. v. Superior*

28  *Court* 115 Cal.App.3d 802, 805 (1981).  And because the privilege only applies to communications

United States District Court

For the Northern District of California

1    that are intended to be kept confidential,[17] it does not apply to communications the client intends for

2    its lawyer to pass on to a third party.

3         EXDS asks the court to *presume* that Fetzer disclosed privileged information to Defense

4    counsel, citing *Widger*, 232 Cal.App.3d 572; and *Shadow Traffic Network v. Superior Court*, 24

5    Cal.App.4th 1067 (1994).  These cases applied a presumption developed in the context of indirect

6    conflict of interest cases (the "*Widger* Presumption").  *See Widger*, 232 Cal.App.3d at 594-96.

7    Under *Widger* the party seeking disqualification must first show that the employee or expert in

8    question  possesses confidential attorney-client information materially related to the proceedings

9    before the court.  If the party makes this showing, a rebuttable presumption arises that the employee

10   or expert has disclosed the privileged information during the course of his or her work for the

11   attorney whose disqualification is sought.  *See Widger*, 232 Cal.App.3d at 596.

12        The *Widger* Presumption has limited application, if any, in situations involving counsel's *ex

13   parte* contact with an adverse party's former employee.  The latter situation implicates policies

14   regarding counsel's ability to investigate the facts relevant to his client's case which are not

15   implicated in conflict of interest cases.  Having carefully considered California case law on

16   disqualification motions, the court finds it unlikely California courts would apply the *Widger*

17   Presumption in the context of *ex parte* contacts with an opposing party's former employee.  This

18   conclusion is supported by the recent case of *La Jolla Cove Motel and Hotel Apartments, Inc. v.

19   Superior Court*, 121 Cal.App.4th 773 (2004).

20        *La Jolla Cove Motel* involved an action against a corporation by its minority shareholder and

21   its former president.  The plaintiff's attorney had *ex parte* contacts with two dissident directors of the

22   defendant without consent of defendant's counsel (but with the consent of directors' separate

23   counsel).  The defendant's counsel submitted a declaration stating that the directors had received

24   attorney-client privileged case status reports relating to litigation concerning defendant and one of

25   the plaintiffs.  Although the directors possessed privileged information, the court expressly placed on

26   the defendant the burden of showing that the directors actually disclosed any such privileged

27

28        [17]    "'The communication must be intended by the client to be treated in confidence.'" *La
     Jolla Cove Motel and Hotel Apartments, Inc. v. Superior Court*, 121 Cal.App.4th 773, 791 (2004),
     quoting *Alpha Beta Co. v. Superior Court*, 157 Cal.App.3d 818, 824-25 (1984).

information to the plaintiff's counsel:

> "'Once a party claims the attorney-client privilege, the communication sought to be suppressed is presumed confidential. A party opposing the privilege has the burden of proof to show the communication is one not made in confidence. (Evid. Code, § 917.)  *However, the party claiming privilege has the burden to show that the communication sought to be suppressed falls within the terms of the statute. * * * *'* ¶ *Here, the showing made by La Jolla Cove at best demonstrated that Durisoe and Baxter possessed certain information protected by the attorney-client privilege, but was inadequate to prove that any protected communications were divulged by them to the Jackmans' counsel.*" *La Jolla Cove Motel*, 121 Cal.App.4th at 791 (citations omitted) (emphasis added).

Given that California did not apply the *Widger* Presumption to *current* corporate directors, it is unlikely that California would apply the presumption to a *former* employee.

In any event, EXDS has not established the facts necessary to trigger the *Widger* Presumption.  In order to trigger the presumption, "[t]he party seeking disqualification must show that its present or past attorney's former employee possesses confidential attorney-client information materially related to the proceedings before the court." *Widger*, 232 Cal.App.3d at 596.  The court specifically cautioned that "showing merely potential access to confidences without actual exposure is insufficient. The threat to confidentiality must be real, not hypothetical." *Widger*, 232 Cal.App.3d at 596 n. 13.

Fetzer herself is not an attorney.  EXDS submitted deposition testimony from Hamilton Southworth, one of EXDS' former outside attorneys (who it later hired in a business capacity) with whom Fetzer had contact during lease negotiations.  Southworth testified that while he was outside counsel for EXDS he would mark up initial draft leases, send the markups to one of EXDS' in house attorneys, Mary Anne Wellman, and they would then discuss the markups, and problems and issues with the lease.  He further testified that "if there was a business point that we didn't know the answer to, Mary Anne Wellman would have a weekly meeting with Janice Fetzer and would run through a list of issues that Janice was responsible for giving guidance on."  Southworth did not indicate whether the "business points" Wellman asked Fetzer about were used for the purpose of Southworth or Wellman providing EXDS with legal advice, as opposed to simply supplying business points (such as rental rates or other agreed terms) to insert into a draft lease.

1    Fetzer herself testified that EXDS' attorneys "wouldn't really give me advice."  And she

2    made it clear that her involvement with EXDS' attorneys occurred in the context of negotiations in

3    which "there's probably all kinds of things [EXDS' attorneys] said that have been disclosed to third

4    parties in all sorts of ways because they're part of a team that sits at a table and works things out."

5        Based on the record submitted by EXDS, the court finds that EXDS has not shown that

6    Fetzer actually "possesses confidential attorney-client information materially related to the

7    proceedings before the court."  The record establishes that Fetzer worked with EXDS' attorneys in

8    the context of negotiating leases with third parties.  As noted above, the attorney-client privilege

9    does not apply where the attorney acts merely as a negotiator.  *See Montebello Rose*, 119 Cal.App.3d

10   at 32.  EXDS has not shown that any communications to which Fetzer was privy were intended by

11   EXDS to be confidential.  On the contrary, Fetzer's testimony suggests the communications were

12   intended to be shared with the third parties with whom EXDS was negotiating.

13       At most, EXDS has shown only that Fetzer potentially had access to attorney-client

14   confidences, not that she was actually exposed to any such confidences.  Thus, even if the court were

15   to find the *Widger* Presumption applies in the context of mere *ex parte* contacts with an opposing

16   party's former employee, EXDS has not made a sufficient showing to trigger the presumption.

17       Moreover, under the rationale of *La Jolla Cove Motel* and *Gregori* even if Fetzer was

18   exposed to some privileged communications at EXDS, disqualification is not warranted absent a

19   showing that: 1) she actually disclosed to Defense counsel any of those privileged *communications*

20   (as opposed to unprivileged information which may have been discussed during the privileged

21   communications); and 2) Defense counsel improperly used or may use the information in a way that

22   will have a substantial continuing effect on future judicial proceedings.  *See, La Jolla Cove Motel*,

23   121 Cal.App.4th at 791; and *Gregori*, 207 Cal.App.3d at 309.  EXDS has made no such showing.

24       Nothing in the record suggests that Fetzer disclosed to Defense counsel any confidential

25   communications with EXDS' attorneys, nor any advice EXDS' counsel gave to EXDS.  To the

26   extent some of the information Fetzer disclosed to Defense counsel is information that she may have

27   previously conveyed to EXDS' counsel–such as EXDS' business strategies in connection with lease

28   negotiations–that information did not become privileged just because it was conveyed to an attorney.

**United States District Court**

**For the Northern District of California**

*See, e.g., La Jolla Cove Motel*, 121 Cal.App.4th at 791 (information that was not privileged to begin with may not be made so by later delivery to an attorney).

### D.   No "Remedial" Relief Is Warranted

In addition to seeking disqualification of Defense counsel, EXDS asks the court to order Defense counsel to turn over all remaining documents they received from Fetzer, as well as counsel's notes of their interviews with her.  EXDS also asks the court to strike Fetzer's declarations.  Finally, EXDS asks for monetary sanctions.

Because EXDS has not shown Defense counsel engaged in any improper conduct, nor that they obtained any confidential or privileged information from Fetzer, none of the "remedial" relief requested by EXDS is warranted.

The question of whether to order Defendants to turn over the remaining documents they obtained from Fetzer is a close question.  If the documents were originals rather that printouts from electronic data in Fetzer's possession, and if EXDS were still the owner of any such original documents, a turn-over order might be appropriate.  Here, however, the documents at issue are apparently copies, not originals.  And EXDS has not established that it owns the documents.[18]

Moreover, requiring Defense counsel to turn over the documents would only create unnecessary work for all concerned, since Defendants would be entitled to seek production of the documents to the extent the information is relevant to this action.[19]

### IV.   CONCLUSION

EXDS has patched together a few pithy quotes without addressing the policy considerations underlying the quoted language or how those considerations apply in this case.  Many of the cases are inapplicable either because they do not involve mere *ex parte* contact with an opposing party's former employee, or they are from jurisdictions whose laws are inconsistent with California law.

---

[18]   EXDS sold substantially all of its operating assets C&W in 2002.  EXDS has not shown that the documents Fetzer retained in her possession are copies of documents which were *not* sold in that transaction.  EXDS does not cite to any portion of its Asset Purchase Agreement with C&W, or any other evidence, showing that the documents and data in Fetzer's possession were excluded from the "Purchased Assets" under Section 2.1 of that agreement.

[19]   Since Defense counsel were not acting improperly when they first obtained the documents, it is likely Defendants would be allowed relief from the discovery cutoff to request production of the documents.

1  Application of the proper analysis and policy considerations under California law shows that

2  disqualification is clearly not warranted.  The motion is nothing more than a strategic attempt to

3  deprive Defendants of their chosen attorneys at a late stage in these proceedings and to eliminate

4  unfavorable evidence.  No improper conduct has been shown.  Defense counsel interviewed one of

5  EXDS' former employees, as they are entitled to do.  The former employee declined to grant similar

6  interviews to EXDS' counsel, as she is entitled to do.  While this turn of events may not be to

7  EXDS' liking, it is not grounds for disqualifying opposing counsel.

8  Dated:   *8/24/05*

9                                                __*/s/ Patricia V. Trumbull*____
                                                 PATRICIA V. TRUMBULL
10                                               United States Magistrate Judge

**United States District Court**

For the Northern District of California